**Timothy S. DeJong**, OSB No. 940662
Email: tdejong@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

John A. Lee (admitted pro hac vice)
jlee@banishlaw.com
Banie & Ishimoto LLP
3705 Haven Ave., #137
Menlo Park, CA 94025
T: 650.241.2774
F: 650.241.2770

Attorneys for Azure
Landmark Technology, LLC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| LANDMARK TECHNOLOGY, LLC | Civil Action No.  3:18-cv-01568-JR |
| Azure | **LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF, AND MEMORANDUM IN SUPPORT** |
| v. | |
| AZURE FARMS, INC. | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

1
**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

# TABLE OF CONTENTS

CERTIFICATION UNDER LR 7-1(1)(A) ..................................................................1

MOTION..................................................................................................................1

I.  INTRODUCTION AND RELIEF REQUESTED ..............................................1

II.  FACTUAL BACKGROUND ..........................................................................2

    A.  LANDMARK'S THOROUGH PRE-SUIT INVESTIGATION ......................2

    B.  AZURE'S ERRONEOUS CLAIM THAT THE '319 PATENT EXPIRED IN 2006..................................................................................................4

III.  ARGUMENT.................................................................................................4

    A.  LEGAL STANDARD .............................................................................4

    B.  AZURE'S COUNTERCLAIM MUST BE DISMISSED BECAUSE IT IS PREEMPTED BY FEDERAL PATENT LAW. .............................................5

        1.  ORS § 646A.810 is Preempted by Federal Patent Law Because it Would Impose Liability Without Requiring a Showing of "Objective Baselessness," Contrary to Federal Circuit Precedent, and Because it Conflicts With 35 U.S.C. § 287 By Interfering With the Federal Right of Patent Holders to Provide Notice Under Federal Patent Law................5

        2.  As Pleaded, Azure's Counterclaim is Preempted, Regardless of Whether the Oregon Statute Itself is Preempted..................................................16

        3.  Azure's Counterclaim Is Not Cognizable As An Independent Claim Under the Oregon UTPA, But Even if it Were, Such a Claim Would Still be Preempted. ................................................................................17

        4.  Azure's Claims Are Premature Because Azure Cannot Plausibly Plead "Objective Baselessness" Before the Infringement and Validity of Landmark's '319 Patent Has Been Decided. .......................................18

    C.  AZURE'S COUNTERCLAIM IS BARRED BY THE *NOERR-PENNINGTON* DOCTRINE AND BY THE OREGON LITIGATION PRIVILEGE. ............19

    D.  AZURE'S COUNTERCLAIM IS PREEMPTED BY FEDERAL ANTITRUST LAW. ..................................................................................................20

    E.  AZURE HAS FAILED TO PLEAD AN "ASCERTAINABLE LOSS" OR "RELIANCE," AS REQUIRED BY OREGON LAW..................................22

    F.  AZURE LACKS AN OBJECTIVELY REASONABLE BASIS FOR BRINGING ITS COUNTERCLAIM, AND THIS COURT SHOULD THEREFORE AWARD LANDMARK ATTORNEY'S FEES AND COSTS INCURRED IN BRINGING THIS MOTION.....................................................................................24

IV.  CONCLUSION.............................................................................................25

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

## TABLE OF AUTHORITIES

**Cases**

*3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372 (Fed. Cir. 2012) ............................................ 11

*Abbs v. Principi*, 237 F.3d 1342 (Fed. Cir. 2001) ........................................................... 9

*Allen v. Delrich Properties, Inc.*, 2006 WL 1050536 (D. Or. 2006) ...................................... 17, 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 4, 16

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696(9th Cir. 1990) ......................................... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 4

*Boydstun Equipment Manufacturing, LLC v. Cottrell, Inc.*,
2017 WL 4803938 (D. Or. Oct. 24, 2017) ...................................................................... 15

*Chard v. Galton*, 277 Or. 109 (1977) .......................................................................... 18

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ...................................................... 5

*Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537 (Fed. Cir. 1985) ........................... 6

*Costco Wholesale Corp. v. Maleng*, 522 F.3d 874 (9th Cir. 2008) ............................................ 19

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256 (Fed. Cir. 2018) ...................... 11

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254 (Fed. Cir. 2008) ......................... 7

*Elantech Devices Corp. v. Synaptics, Inc.*, 2006 WL 1883255 (N.D. Cal. 2006) ............................ 18

*Erickson v. Pardus*, 551 U.S. 89 (2007) ...................................................................... 11

*Farmers Insurance Exchange v. First Choice Chiropractic & Rehabilitation*,
2016 WL 10827072 (D. Or. 2016) ............................................................................... 17

*Feitler v. Animation Celection, Inc.*, 170 Or.App. 702 (2000) ............................................. 22

*Fleshman v. Wells Fargo Bank, N.A.*, 27 F.Supp.3d 1127 (D. Or. 2014) ..................................... 21

*Gart v. Logitech, Inc.*, 254 F.3d 1334 1345-46 (Fed. Cir. 2001) ........................................... 11

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
362 F.3d 1367 (Fed. Cir. 2004). .......................................................................... passim

*Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360 (Fed. Cir. 2002) ......................................... 7

*Graham v. U.S. Bank, National Association*, 2015 WL 10322087 (D. Or. 2015) ............................... 18

*Hedrick v. Spear*, 138 Or.App. 53 (1995) ..................................................................... 21

*Hughes v. Talen Energy Marketing, LLC*, 136 S.Ct. 1288 (2016) .............................................. 6

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998) ........................... 6

*In Re Innovatio IP Ventures, LLC Patent Litigation*,
921 F.Supp.2d 903 (N.D. Ill. 2013) ....................................................................... 12, 23

*In re Reyes*, 910 F.2d 611 (9th Cir. 1990) ................................................................ 14, 20

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S
FIRST CLAIM FOR RELIEF**

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000) .................................. 20

*Mantia v. Hanson*, 190 Or.App. 412 (2003) .................................................................. 18

*Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) ............................... 11

*MGIC Indem. Corp. v. Weisman*, 803 F.2d 500 (9th Cir. 1986) ....................................... 4

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). ........................ 6

*Minks v. Polaris Industries, Inc.*, 546 F.3d 1364 (Fed. Cir. 2008) ............................... 11

*Niazi v. Pressure Products Medical Supplies, Inc.*,

  2017 WL 108114 (W.D. Wis. Jan. 11, 2017) ................................................ 12

*Oil States Energy Services, LLC v. Greene's Energy Group, LLC*, 138 S.Ct. 1365 (2018) ........... 5

*Pacificare Inc. v. Martin*, 34 F.3d 834 (9th Cir. 1994) ................................................ 15

*Paul v. Providence Health System-Oregon*, 237 Or.App. 584 (2010) .............................. 21

*Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004) ........................... 15

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) ........... 15

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) .................................................. 12, 23

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ............................................................ 4

*State ex rel. Redden v. Discount Fabrics, Inc.*, 289 Or. 375 (1980) .............................. 10

*U.S. v. Manning*, 527 F.3d 828 (9th Cir. 2008) .......................................................... 15

*Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860 (Fed. Cir. 1997) ........................... 6

*Visto Corp. v. Sproqit Technologies, Inc.*, 360 F.Supp.2d 1064 (N.D. Cal. 2005) .................. 18

*Von Saher v. Norton Simon Museum of Art at Pasadena*,

  578 F.3d 1016(9th Cir. 2007) ...................................................................... 4

*Wollam v. Brandt*, 154 Or.App. 156 ........................................................................ 18

*Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999) ........................... 6

**Statutes**

35 § U.S.C. 261 ......................................................................................................... 5

35 U.S.C. § 154(c) ..................................................................................................... 4

35 U.S.C. § 282(a) ..................................................................................................... 16

35 U.S.C. § 287 ..................................................................................................... 1, 6, 10

ORS § 646.608(4) ..................................................................................................... 17

ORS § 646.638 ..................................................................................................... 5, 21, 22

ORS § 646.638(3) ..................................................................................................... 24

ORS § 646A.810 ..................................................................................................... 5, 14, 17

ORS § 646A.810 (4)(a) ............................................................................................ 10

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

ORS § 646A.810 (4)(b) ............................................................................. 10

ORS § 646A.810 (4)(g) ............................................................................. 8

ORS § 646A.810(4) ................................................................................... 7

ORS § 646A.810(4)(a) ..................................................................... 7, 9, 20

ORS § 646A.810(4)(b) .......................................................................... 7, 9

ORS § 646A.810(4)(b)(C) ..................................................................... 8, 9

ORS § 646A.810(4)(c) ......................................................................... 8, 10

ORS § 646A.810(4)(d)(A) ..................................................................... 8, 9

ORS § 646A.810(4)(d)(B) ..................................................................... 8, 9

ORS § 646A.810(4)(e) ..................................................................... passim

ORS § 646A.810(4)(f) ............................................................................. 9

ORS § 646A.810(4)(g) ........................................................................ 9, 10

ORS § 646A.810(6) ................................................................................. 5

## Other Authorities

David Lee Johnson, *Facing Down the Trolls: States Stumble on the Bridge to Patent-Assertion Regulation*, 71 Wash. & Lee L. Rev. 2023, 2034 (2014) ..................................................... 5, 14

Greg Halsey, *There is a Pink Elephant at Our Patent Negotiation, and His Name is Declaratory Judgment*, 46 San Diego L. Rev. 247, 248 (2009) .................................................................. 11

Paul R. Gugliuzza, *Patent Trolls and Preemption*, 101 Va. L. Rev. 1579 (2015) ............. 9, 13, 14

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

## CERTIFICATION UNDER LR 7-1(1)(A)

The parties have met and conferred regarding this motion, but have been unable to resolve their dispute. Counsel for Landmark first raised the issues in this motion with counsel for Azure at the parties' Rule 26(f) conference. Counsel for Landmark then sent an email on November 16, 2018 regarding these issues and the parties met and conferred by telephone on November 19, 2018. Lee Decl., ¶ 2.

## MOTION

Pursuant to Fed. R. Civ. P. 12(b)(6), Landmark moves for an order dismissing with prejudice Azure Farm's Inc.'s First Claim for Relief for failure to state a claim under the Oregon Unfair Trade Practices Act, and an order awarding Landmark its attorney's fees and costs incurred in preparing this Motion, as the "prevailing defendant" under ORS § 646.638(3).

## I.   INTRODUCTION AND RELIEF REQUESTED

In its pleading, Defendant Azure Farms Inc. ("Azure") ("Azure" or "Defendant") has brought a Counterclaim against Landmark Technology, LLC ("Landmark") for "Violation of the Oregon Patent Infringement Claim Made in Bad Faith Statute, ORS §646A.810." *See* Dkt. No. 13 at 9 ("Answer and Defenses to Plaintiff's Complaint and Counterclaim"). Landmark files the following motion to dismiss Azure's Counterclaim: its "First Claim For Relief," which is the only counterclaim asserted in its pleading.

Azure's Counterclaim fails because the Oregon statute declaring "bad faith patent infringement" to be an unfair trade practice under Oregon law—ORS § 646A.810—is preempted by federal patent law. The statute allows courts to impose liability on patent holders without requiring a finding of "objective baselessness," contrary to well-settled Federal Circuit precedent governing the preemption of state law claims, which requires a showing of "objective baselessness" to avoid preemption. The statute also requires a lesser burden of proof than that required by the Federal Circuit precedent (i.e., clear and convincing evidence). Moreover, the Oregon statute conflicts with the right of patent holders to provide "actual notice" to accused infringers under 35 U.S.C. § 287. But even if the Oregon statute itself were not preempted,

1

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

Azure's Counterclaim is nonetheless preempted as pleaded because Azure fails to allege "objective baselessness" in its pleading, as required by controlling Federal Circuit precedent.

At a minimum, Azure's Counterclaim is premature at this stage and any attempt to amend would be futile, because Azure cannot plausibly plead any facts in support of an allegation of "objective baselessness" at this time, since the merits of Landmark's infringement claim or the validity of its patent have not yet been adjudicated by this Court, or any other. Azure's Counterclaim is further barred by the Oregon litigation privilege, which is absolute, and applies to communications made in anticipation of litigation, as alleged here.

Additionally, several subsections of the Oregon statute are preempted by federal antitrust law because they pose a so-called "hybrid" restraint of trade in the context of patent licensing negotiation, and promote anticompetitive activity. And since the Oregon statute has no severability clause, the remainder of the statute must fall as well.

Finally, Azure's Counterclaim must be dismissed because Azure has clearly failed to plead either an "ascertainable loss of money or property," or any "reliance" on the misrepresentations it alleges, both of which are required to state the damages and causation elements of Azure's claim under the Oregon Unfair Trade Practices Act. Azure therefore lacks an objectively reasonable basis for bringing its Counterclaim, and this Court should both dismiss the Counterclaim and award Landmark its attorneys' fees and costs incurred in bringing this Motion as the "prevailing defendant" under ORS § 646.638(3).

Accordingly, Landmark asks the Court to dismiss Azure's Counterclaim, to award Landmark its attorneys' fees and costs incurred in preparing this Motion

.

## II.  FACTUAL BACKGROUND

### A.    Landmark's Thorough Pre-Suit Investigation

Landmark's complaint in this matter contains very detailed description of the background of Landmark's '319 Patent and Landmark's infringement claims against Azure. Landmark's complaint included:

- A copy of U.S. Patent 6,289,319  (Dkt. No. 1, Complaint, Ex. A.)

2

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

- Assertion that Lawrence Lockwood is the owner of the '319 Patent and that Mr. Lockwood licensed the patents to Landmark.  (Dkt. No. 1, ¶15)

- Details regarding the two reexaminations of the ''319 Patent by the United States Patent and Trademark Office ("PTO"), both of which confirmed its validity. The certificates confirming validity were attached as Exhibits F to the complaint.

- A copy of a prior art patent in the Lockwood family of patents, U.S. Patent No. 4,359,631,, as well as a copy of the decision by the three-judge panel of the Board of Patents Appeals and Interferences at the PTOdetailing why the '319 Patent was held patentable over the prior art at issue before the Board. (Dkt. No. 1, Complaint, Exs. B and C.)

- A copy of the declaration of Joey Maitra as to the validity of the '319 Patent and the patent's inventive concepts over the prior art.  (Dkt. No. 1, Complaint, Ex. D.)

- A detailed, 41-page chart showing how Azure is infringing Landmark's patent.  (Dkt. No. Complaint, Ex. G.)

Before this lawsuit was filed, Landmark sent two letters to Azure.  However, Azure never responded to Landmark's letters.  Azure never requested additional information, including any information that Azure now claims is lacking from those letters under ORS §646A.810.  Lee Decl. ¶ 3.  On October 15, 2018 (after this lawsuit was filed) Azure's counsel, Ms. Tamsen Leachmann requested a copy of the pre-suit letters.  She wrote, "Can you send me a copy of the demand letters you sent to my client? I see them referenced but cannot locate a copy of them. Thank you for providing these at your earliest convenience."  Lee Decl. ¶ 3.  A copy of the letters were provided to Ms. Leachmann on October 18.  *Id.*

Instead of contacting Landmark, Azure instead filed its First Counterclaim and contacted the local district attorney's office.  However, these claims by Azure were made **after** Landmark's Complaint was on file and Azure was in possession of at least the following information:

- The patent number of the '319 Patent. (*E.g.,* in Landmark's letters and Landmark's Complaint.);

- Current and contact information to contact the patentee/assignee, through counsel (*E.g.,* in Landmark's letters and Landmark's Complaint.);

- Statement of facts (*E.g.,* in Landmark's letters, Landmark's Complaint and accompanying exhibits, such as the 41-page chart in Exhibit G).

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

B.    **Azure's Erroneous Claim That The '319 Patent Expired in 2006**

At the heart of Azure's Counterclaim is the legally erroneous assertion that the '319 Patent expired in 2006.  The application that became of the '319 Patent was filed on November 30, 1994 and issued on September 11, 2001.  (Dkt. No. 1, Ex. A).  Under 35 U.S.C. § 154(c), the term for a patent filed before June 8, 1995 is the greater of 20 years from the application date or 17 years from the grant date.  *See* 35 U.S.C. § 154(c) and U.S. Patent and Trademark office guidance on patent term at https://www.uspto.gov/web/offices/pac/mpep/s2701.html.  Thus, the '319 Patent expired on September 11, 2018 after the filing of this lawsuit, and after Azure was on notice of infringement under 35 U.S.C. § 287.

### III. ARGUMENT

A.    **Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a party may challenge the sufficiency of the statement of the claim for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, a counterclaim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id*. at 681.  Rather, to state a plausible claim for relief, the counterclaim "must contain sufficient allegations of underlying facts" to support its legal allegations. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In addition to the facts set forth in the pleading, matters that are properly the subject of judicial notice may also be considered when deciding a motion to dismiss for failure to state a claim. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). In fact, the Court can disregard allegations in the pleading if such allegations are contradicted by facts which may be judicially noticed by the Court.  *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 578 F.3d 1016, 1021-22 (9th Cir. 2007).

Accepting only the factual allegations set forth in the pleading as true, the Court must

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

decide whether Defendant is entitled to some form of legal remedy. *Twombly*, 550 U.S. at 555.

Granting a Rule 12(b)(6) motion to dismiss is proper where there is either a lack of a cognizable

legal theory or the absence of sufficient facts to support a cognizable legal theory. *Balistreri v.*

*Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**B.    Azure's Counterclaim Must Be Dismissed Because It Is Preempted by Federal Patent Law.**

**1.    ORS § 646A.810 is Preempted by Federal Patent Law Because it Would Impose Liability Without Requiring a Showing of "Objective Baselessness," Contrary to Federal Circuit Precedent, and Because it Conflicts With 35 U.S.C. § 287 By Interfering With the Federal Right of Patent Holders to Provide Notice Under Federal Patent Law.**

ORS § 646A.810(2) prohibits a "person" from "communicat[ing]" a "demand" "if in the

demand the person . . . asserts or claims in bad faith that the recipient has infringed or

contributed to infringing a patent."[1]  ORS § 646A.810(6) declares that a "violation of subsection

(2)"—i.e., the communication of a demand containing a "bad faith" assertion of patent

infringement—to be "an unlawful practice under ORS [§] 646.608" and actionable under ORS §

646.638, a provision of the Oregon Unfair Trade Practices Act ("UTPA") that allows private

parties to sue for practices declared to be unlawful under § 608.  In short, the statute at issue here

(ORS § 646A.810) has extended the scope of actionable conduct under the UTPA in an attempt

to regulate the licensing of uniquely federal property rights, created by federal statute.  *See Oil*

*States Energy Services, LLC v. Greene's Energy Group, LLC*, 138 S.Ct. 1365, 1375 (2018)

(noting that, "[p]atents convey only a specific form of property right—a public franchise…As a

public franchise, a patent can confer only the rights that 'the statute prescribes,' and that the

"Patent Act provides that '[s]ubject to the provisions of this title, patents shall have the attributes

of personal property,'…[a] provision [that] qualifies any property rights that a patent owner has

---

[1] According to one commentator, the Oregon legislature enacted ORS § 646A.810 with remarkable speed: "the bill went from the Senate floor to the signing desk in only twenty-four calendar days."  David Lee Johnson, *Facing Down the Trolls: States Stumble on the Bridge to Patent-Assertion Regulation*, 71 Wash. & Lee L. Rev. 2023, 2034 (2014) (describing the speed with which the Oregon legislature passed the law as "staggering").  Given the scant opportunity for legislative vetting vis-à-vis the law of preemption, the conflicts the Oregon statute poses with federal patent law are perhaps unsurprising.

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

in an issued patent, subjecting them to the express provisions of the Patent Act.") (citing 35 § U.S.C. 261).

Azure's Counterclaim, purporting to bring a claim under ORS § 646A.810 and the UTPA, must be dismissed because it is preempted by federal patent law.  Under the Supremacy Clause of the U.S. Constitution, art. VI, § 2, "state law that conflicts with federal law is without effect." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (quotation omitted).  Thus, state law is preempted where Congress has legislated to "occupy an entire field," or where "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," so-called "conflict preemption." *Hughes v. Talen Energy Marketing, LLC*, 136 S.Ct. 1288, 1297 (2016) (quotation omitted).  Here, Federal Circuit law applies "in deciding whether the patent laws preempt a state-law tort claim." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004).

Conflict preemption applies in this case because Azure's Counterclaim brought under the UPTA pursuant to ORS § 646A.810 **(1)** conflicts with the Federal Circuit's strict requirement that state tort liability may not lie without a showing of "objective baselessness," **(2)** conflicts with the higher burden of proof required by the Federal Circuit for such claims (i.e., clear and convincing evidence), and **(3)** presents an obstacle to the "purposes and objectives" of federal patent law embodied in 35 U.S.C. § 287.  Section 287 provides that patent holders "may give notice to the public that the [patented article] is patented" and makes "notice of the patent to the accused infringer a prerequisite to the recovery of damages." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998) (citing 35 U.S.C. § 287), *overruled in part on other grounds*, *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999).  "A patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction." *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997); *see also Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985) (finding patent holder

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

properly "did only what any patent owner has the right to do to enforce its patent, and that includes threatening alleged infringers with suit").

Under Federal Circuit precedent, state law imposing liability "for publicizing a patent in the marketplace" is barred by federal patent law "unless the plaintiff can show that the patentholder acted in bad faith." *Hunter Douglas*, 153 F.3d at 1336. Although "what constitutes bad faith remains to be determined on a case by case basis," *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999), "[b]ad faith includes separate **objective <u>and</u> subjective** components" and a patent holder's claims must be "so baseless that no reasonable litigant could realistically expect to secure favorable relief." *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1261 (Fed. Cir. 2008) (quotation omitted) (emphasis added).

Thus, in *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1375-77, the Federal Circuit specifically held that "bad faith" cannot be satisfied "in the absence of a showing that the claims asserted were objectively baseless." *Id.* at 1375. Rather, the claim of patent infringement asserted must be shown to be objectively baseless "in the sense that no reasonable litigant could realistically expect success on the merits," "either because [the patents asserted] were obviously invalid or plainly not infringed." *Id.* at 1375-76. Moreover, the Federal Circuit has held that it must be shown by "**clear and convincing evidence** that the infringement allegations are objectively false, and that the patentee made them in bad faith" before the "statements" asserting patent infringement "are actionable" under state law. *Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002) (emphasis added).

Here, however, ORS § 646A.810 expands the definition of "bad faith" in ways that have nothing to do "objective baselessness," contrary to *Globetrotter* and other Federal Circuit precedent.[2] Indeed, ORS § 646A.810 would allow courts to impose liability for conduct that has no bearing whatsoever on the merits of a patent infringement claim. ORS § 646A.810(4) states that a "court may consider one or more of the following conditions as evidence that a person or

---

[2] *See* Johnson, *supra* note 1, at 2071 ("Permitting states to define bad faith without respect to federal precedent would permit states to establish divergent bad-faith standards.").

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

the person's affiliate has, in bad faith, alleged, asserted or claimed an infringement of a patent," including:

- the fact that a demand "required the recipient to respond or to pay a license or other fee within a period of time that a reasonable time would consider to be unreasonably short" (ORS § 646A.810(4)(a));

- the fact that a demand "did not include" the "patent number," "[c]urrent and accurate contact information for the patentee," and a "statement of facts" that "would enable a reasonable person to understand the basis of the allegation" (ORS § 646A.810(4)(b));

- the fact that a demand "did not include" a "statement of facts, together with an explanation or a description of the facts that would enable a reasonable person to understand the basis of the allegation or claim that the recipient has infringed the patent or the rights of the patentee, assignee or licensee under the patent" ORS § 646A.810(4)(b)(C);

- the fact that the person communicating the demand "failed to provide the information described in paragraph (b) of this subsection to the recipient within a reasonable time after the recipient requested the information" (ORS § 646A.810(4)(c));

- the fact that the person communicating the demand, "before communicating the demand," "[f]ailed to compare the claims in the patent to the features or specifications of the recipient's product, service or technology" ORS § 646A.810(4)(d)(A);

- the fact that the person communicating the demand, "before communicating the demand," compared the claims to the recipient's product "in a way that did not enable the person" "to specifically identify the infringing features or specifications of Azure's technology" ORS § 646A.810(4)(d)(B);

- the fact that the person communicating the demand "offered to license the patent for an amount that a reasonable person with knowledge of the market value of a

8

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

license for the invention that is covered by the patent would consider unreasonable" (ORS § 646A.810(4)(e));

- the fact that a person "**previously** communicated a demand or filed a complaint based on the same or similar allegation" and the "demand did not include the information described in paragraph (b) of this subsection" or a "court, an arbitration panel or another body with power to adjudicate a patent dispute dismissed the complaint as frivolous **or** without merit at any point during a proceeding before the court" (ORS § 646A.810 (4)(g) (emphasis added).

The above-mentioned "conditions" are all at issue here, since Azure alleges (*inter alia*) that: "Landmark's demand required Azure to respond or to pay the license or other fee within a period of time that a reasonable person would consider unreasonably short, such as the 15-day period at issue here" (ORS § 646A.810(4)(a)); "Landmark's demand did not include current and accurate contact information for the patentee, assignee, or licensee" (ORS § 646A.810(4)(b)); "Landmark's demand did not include a statement of facts, together with an explanation or a description of the facts that would enable a reasonable person to understand the basis of the allegation or claim that Azure had infringed the patent or the rights of Landmark" (ORS § 646A.810(4)(b)(C)); "Landmark, before communicating the demand, failed to compare the claims in the patent to the features or specifications of the recipient's product, services or technology that Azure had used during the relevant periods of time" ORS § 646A.810(4)(d)(A); "Landmark, before communicating the demand, failed communicate in a way that enabled Azure to specifically identify the infringing features or specifications of Azure's technology" ORS § 646A.810(4)(d)(B); "Landmark offered a license to Azure for an amount that a reasonable person with knowledge of the market value of a license for the covered invention would consider unreasonable" (ORS § 646A.810(4)(e)) ; "Landmark knew or should have known at the time of the demand, the claim of infringement was without merit or was deceptive" (ORS § 646A.810(4)(f)); and "Landmark previously communicated the same demand or filed a complaint based on similar allegations"  (ORS § 646A.810(4)(g)).  Dkt. No. 13 at 9-10.

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S**
**FIRST CLAIM FOR RELIEF**

Contrary to the standard required by *Globetrotter*, all of these factors set forth by ORS §646A.810 would allow courts to find "bad faith"—and thereby impose liability under Oregon's UTPA—*without* evaluating the whether an assertion of patent infringement is "**objectively baseless**."[3] ORS § 646A.810(4)(f) states only that a court "**may** consider" whether the person communicating the demand knew or should have known that the claim of patent infringement was "without merit"—a far more permissive standard than "objectively baseless" under *Globetrotter*. *See Abbs v. Principi*, 237 F.3d 1342, 1345 (Fed. Cir. 2001) ("The fact that an appeal is without merit does not mean that the appeal is necessarily a frivolous one."). Indeed the difference between the lower "without merit" standard and the higher "objectively baseless" or "frivolous" standard is present within the statutory language itself, and thus the Oregon statute is clearly attempting to capture a broader set of claims than would be allowed under *Globetrotter*. *See* ORS § 646A.810(4)(g) (distinguishing between "frivolous **or** without merit") (emphasis added). By targeting not only "objectively baseless" claims but also all unsuccessful claims for patent infringement as well, ORS § 646A.810(4)(f) contravenes *Globetrotter* and exposes all patent holders to the specter of liability, effectively ending the "American Rule" for patent litigation and pre-litigation negotiations in the state of Oregon.

Moreover, neither ORS § 646A.810 nor the Oregon UTPA require that "bad faith" be demonstrated by clear and convincing evidence, again contrary to Federal Circuit precedent. *See Golan*, 310 F.3d at 1371 (requiring "clear and convincing evidence" that a patent owner's infringement allegations are "objectively false" before they are "actionable"). Unlike the burden of proof set forth in *Golan*, the Oregon UTPA requires only a preponderance of the evidence, *See State ex rel. Redden v. Discount Fabrics, Inc.*, 289 Or. 375, 386 (1980) (holding the standard of proof for UTPA claims is a "preponderance of the evidence"). Insofar as ORS § 646A.810

---

[3] Paul R. Gugliuzza, *Patent Trolls and Preemption*, 101 Va. L. Rev. 1579, 1594 (2015) (recognizing that "[s]ome [state] statutes, in tension with the Federal Circuit's requirement that a litigant challenging patent enforcement conduct must show both objective baselessness and the patent holder's improper subjective intent, grant courts leeway to find bad faith based solely on subjective considerations" and observing that "[c]urrent Federal Circuit doctrine plainly prohibits a state from imposing liability based solely on the patent holder's subjective intent")

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

exposes patent holders to state law claims which require a lesser burden of proof than required by Federal Circuit precedent, those claims and the statute that creates them are preempted.

Individual "bad faith" factors under the ORS § 646A.810 present more specific conflicts with federal patent law as well.  For example, ORS § 646A.810 (4)(a) would permit a finding of "bad faith" for extending a licensing offer for an "unreasonably short" period; ORS § 646A.810 (4)(b) and ORS § 646A.810(4)(c) permit a finding of "bad faith" for declining to reveal a patent owner's entire infringement case in advance; and ORS § 646A.810(4)(e) permits a finding of "bad faith" for offering a license above "market value."  Imposing liability for such conduct would interfere with well-established negotiating practices among patent holders and potential licensees, conflicting with the objectives of 35 U.S.C. § 287, which authorizes patent holders to provide "notice" of infringement.  The requirement of subsections 4(b) and 4(c) that patent holders provide a "statement of facts" that "enable a reasonable person to understand the basis of the allegation"  clearly conflicts with the far less stringent requirements of "actual notice" required by federal patent law under § 287.  Under federal law, all that is required to provide "actual notice" under § 287 is to "specifically identify a product and offer a license for that product"—*not* to spell out, in detail, a patent holder's entire infringement case against that product, or to reveal to the accused infringer exactly how its product is covered by the claims of the patent.  *Minks v. Polaris Industries, Inc.*, 546 F.3d 1364, 1376 (Fed. Cir. 2008); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334 1345-46 (Fed. Cir. 2001).

Subsections 4(b) and 4(c) would require patent holders to provide more to the accused infringer prior to filing suit than is even necessary in filing a complaint for patent infringement under the Supreme Court's *Twombly/Iqbal* standard of notice pleading.  Indeed, the Federal Circuit has recently clarified that "[s]pecific facts are not necessary" in a complaint for patent infringement, and found a complaint sufficient under where the "complaint specifically identified the three accused products—by name and by attaching photos of the product packaging as exhibits—and alleged that the accused products meet 'each and every element of at least one claim of the patent," noting that those "disclosures and allegations are enough to provide . . . fair notice of infringement of the asserted patents" under *Twombly/Iqbal*.  *Disc Disease Solutions*

11

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

*Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  The Oregon statute would force patent owners to put the cart before the horse, disclosing more in their pre-suit communications than they are required to do to file an actual complaint for patent infringement case under *Twombly/Iqbal*.  Thus, the statute is at odds with the federal pleading standards for patent cases, as well. *Cf. Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 845-46 (9th Cir. 2001) (finding state procedural rule preempted by Fed. R. Civ. P. 56).

There are legitimate and well-recognized strategic reasons why patent holders might opt not to disclose detailed factual allegations relating to their infringement case, since to do so would immediately create a "case or controversy" and trigger Declaratory Judgment jurisdiction, allowing a potential licensee to preemptively sue the patent holder for a declaratory judgment of non-infringement and/or invalidity of its patents.  *See, e.g., 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1379 (Fed. Cir. 2012); *see also* Greg Halsey, *There is a Pink Elephant at Our Patent Negotiation, and His Name is Declaratory Judgment*, 46 San Diego L. Rev. 247, 248 (2009) ("Even a good faith attempt to negotiate a license could expose a patent holder to a declaratory judgment challenge against the validity of the [patent holder's] patents").  Moreover, courts have recognized that a patent holder may have legitimate reasons for not putting all its "cards on the table" even in the complaint, much less in a pre-suit demand letter.  *See, e.g., Niazi v. Pressure Products Medical Supplies, Inc.*, 2017 WL 108114, at *2 (W.D. Wis. Jan. 11, 2017) ("[T]here are far too many fair reasons why a [patent owner] might be unable or justifiably reluctant to put that level of detail in the complaint."); *see also In Re Innovatio IP Ventures, LLC Patent Litigation*, 921 F.Supp.2d 903, 919 (N.D. Ill. 2013) ("The recipient of a demand letter typically approaches any representations therein with a dose of skepticism, knowing that demand letters by definition assert a litigation position that the recipient is able to contest.") (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 941 (9th Cir. 2006) ("[L]egal representations made by potential litigation adversaries are exceedingly unlikely to be believed without investigation.")

Heedless of this reality of federal patent law, the Oregon statute would expose patent holders to accusations of "bad faith"—and potential liability—merely for engaging in the

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

common sense negotiating behavior which has long been permitted under § 287.  Forcing patent holders to behave according to norms that are likely to expose them to declaratory judgment suits would discourage amicable pre-suit resolution of infringement disputes.  By limiting patent holders' federally protected right to provide notice of infringement, the Oregon statute would encourage them to avoid the risk of liability and forego negotiation altogether.  The result would likely be *more* patent litigation, not less.  *See Sosa*, 437 F.3d at 936 ("While responding to demands to settle unfounded claims is burdensome, it is likely less burdensome than if the opposing party, fearing liability in tort for demanding settlement of a possibly weak claim, proceeded directly to litigation.")

Subsections 4(a) and 4(e) would effectively institute a form of price control over patent licensing, imposing liability for patent licensing offers above "market value" and forcing patent owners to keep offers open for purportedly "reasonable" periods, further intruding into day-to-day patent licensing and settlement negotiation practices.  Subsection 4(e)'s requirement that a licensing offer be at or below "market value" to avoid liability runs headlong into conflict with the federal patent damages statute, 35 U.S.C. § 284, which states that courts shall "in no event" award a patent owner damages amounting to "less than a reasonable royalty for the use made of the invention by the infringer."  *Id*. (emphasis added).  In other words, whereas § 284 states that a patent owner is entitled to recover damages *not less* than a reasonable royalty, the Oregon statute imposes liability when patent owner offers a license for *more* than a reasonable royalty.  Thus, federal law imposes a *floor* at the level of a reasonable royalty, whereas Oregon law imposes a *ceiling*.  The two are irreconcilably in conflict, and the Oregon statute must yield.  Subsection 4(a) likewise undermines a patent owner's negotiating power by requiring that licensing offers be extended for purportedly "reasonable" periods—interfering in an area of patent law that Congress has declined to regulate, and inviting collateral litigation over the supposed "reasonableness" of licensing offers which is likely to have the effect of reducing flexibility and amicable pre-suit resolution.

Further, subsection (4)(b) would allow courts to find bad faith merely for sending demand letters that do not include the relevant patent number(s) or contact information for the

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

patent owner.  This makes the statute "vulnerable to a constitutional challenge . . . because it would condemn letters that omit some piece of required information but that contain otherwise accurate infringement allegations."[4]  A letter referring to a patent portfolio in general (e.g., "the ABC Portfolio"), without providing the specific patent numbers, would suddenly become potential evidence of "bad faith," in spite of the fact that this form of shorthand communication is common enough where multiple patents are at issue.  Moreover, this factor would apparently penalize patent owners for failing to provide their own contact information even when represented by counsel, and penalize counsel for not providing their clients' contact information, contrary to the norms of pre-litigation communication by represented parties.

Subsection 4(g) would impose liability where a court previously dismissed a patent owner's complaint as "frivolous **or** without merit."  *Id*. (emphasis added).  However, even this factor is too broad and divorced from the issue of "objective baselessness" to survive preemption.  Indeed, this particular subsection has been singled out for criticism by a commentator who points out that "Oregon's bad-faith factor [4(g)] . . . [is] also less likely to satisfy the federal bad-faith standard" because "[w]hat a prior court finding of meritlessness communicates to the reasonable patent holder about its chances for success in a future complaint, however, is a highly fact-specific inquiry," and it is "easy to imagine a court dismissing a complaint as meritless for reasons that do not relate to the objective validity of the patent or theory of infringement."[5]  And, as another scholar points out, "the Federal Circuit in *Globetrotter* subsequently held that it is not sufficient to show that infringement allegations were 'meritless' or 'false.'  Rather, they must be so baseless that no reasonable litigant could have expected success."[6]  Subsection 4(f) suffers from the same flaw, because it focuses on claims "without merit" rather than "objectively baseless" claims.

Subsection 5(e) would allow courts to consider as evidence of "good faith" the fact that the "person" "has made a substantial investment in using or prosecuting the patent or in

---

[4] Gugliuzza, *supra* note 3, at 1596 (referring to an analogous Wisconsin statute as vulnerable to constitutional challenge for the same reason).
[5] Johnson, *supra* note 1, at 2060.
[6] Gugliuzza, *supra* note 3, at 1633.

LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S
FIRST CLAIM FOR RELIEF

producing or selling a product, service or technology covered by the patent."  But this provision would interfere with any possible sale of the patent by a patent owner, because such evidence of "good faith" would no longer attach to a subsequent owner; the severely negative implications for a patent's value as a saleable asset are obvious.  Likewise, subsection 5(e) allows courts to find good faith among those who commercialize a patented invention but deprives patent owners who cannot or chose not to commercialize their inventions of the same protection.  Yet federal patent law does not discriminate based on the identity of the patent owner.  35 U.S.C. § 271 applies to all patent owners and makes patent infringement illegal and actionable regardless of who owns the patent.  Oregon law cannot provide protections to some patent owners while penalizing others.  This is inconsistent with the uniformity of the federal scheme.

Since the foregoing provisions are preempted, and ORS § 646A.810 contains no severability clause, the statute **as a whole** must be held invalid.  *See In re Reyes*, 910 F.2d 611, 613 (9th Cir. 1990) (holding that the absence of a severability clause evidences the legislature's "intent to have all components operate together or not at all").  Beyond the specific conflicts presented by the various "bad faith" factors outlined above, the statute as a whole does not require a showing of "objective baselessness" by "clear and convincing evidence," which is necessary under *Globetrotter* and *Golan* to survive preemption.  The statute must therefore be preempted in its entirety.

Finally, the Oregon statute cannot be "saved" from preemption by, for example, merely requiring that potential claimants plead "objective baselessness" in addition to the various "bad faith" factors the statute sets forth, or by holding as a matter of federal common law that liability under the Oregon statute must be demonstrated by "clear and convincing evidence," as required by *Globetrotter* and *Golan*.  To do so would be to "rewrite the statute to impose an artificial" construction the legislature did not intend.  *U.S. v. Manning*, 527 F.3d 828, 839-40 (9th Cir. 2008) (finding state statute preempted by federal law, and refusing to "rewrite" it in order to save it from preemption, stating that "[w]e will not undertake this task of unscrambling the egg"); s*ee also Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 937 (9th Cir. 2004) (noting the court's "previously expressed concern that federal courts ought not be redrafting state statutes at

15

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

the level of individual words"). Where the statute that creates the cause of action is preempted, as here, claims purportedly brought under the (preempted) statute do not somehow survive preemption by pleading additional elements or creating federal common law rules that plug statutory holes. To allow claimants to do so would be, in effect, to create a federal common law cause of action that uses the Oregon statute as raw material and improves upon it with additional federal common law elements, the sort of enterprise the Ninth Circuit has disapproved. *See, e.g., Pacificare Inc. v. Martin*, 34 F.3d 834, 836 (9th Cir. 1994) ("the Ninth Circuit has expressly refused to create federal common law causes of action").

    For these reasons, Azure's Counterclaim should be dismissed with prejudice.

### 2. As Pleaded, Azure's Counterclaim is Preempted, Regardless of Whether the Oregon Statute Itself is Preempted.

    Even if ORS § 646A.810 were not preempted by federal patent law—and it clearly is—Azure's Counterclaim is preempted as pleaded, because Azure has failed to plead sufficient facts from which this Court may infer that Landmark's letters to Azure asserted claims of patent infringement that were "objectively baseless in the sense that no reasonable litigant could expect success on the merits" at the time that the letters were sent. *Globetrotter*, 362 F.3d at 1376 (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993)). In *Boydstun Equipment Manufacturing, LLC v. Cottrell, Inc.*, 2017 WL 4803938, at *7 & *18 (D. Or. Oct. 24, 2017), this Court held that a similar claim of "bad faith" patent assertion under ORS § 646A.810 was preempted by federal patent law. There, the plaintiff alleged (*inter alia*) that the patent holder "knew its assertion of infringement to be 'without merit'" because the patent was allegedly obtained "through fraud." *Id.* at *7. However, this Court noted that the "allegation" that the patent was obtained "through fraud is a legal conclusion that the Court need not accept as true," and held that it was not sufficient to "support the conclusion that the . . . demand letter was other objectively or subjectively baseless." *Id.* (citing *Iqbal*, 556 U.S. at 678-79). Accordingly, because the plaintiff did not allege "a sufficient factual basis from which the Court can reasonably infer that [defendant's] patent enforcement actions were objectively baseless," it held plaintiff's claim under ORS § 646A.810 "preempted by federal law." *Id.* at *18 (noting that *Globetrotter* "controls this question").

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

Here, as in *Boydstun*, Azure "does not . . . expressly allege" that Landmark's "letter[s] [were] either objectively or subjectively baseless, although it does allege that [Landmark] knew its assertion of infringement to be 'without merit.'" *Id.* at *7. *See* Dkt. No. 13 at 10 ("Landmark knew or should have known at the time of the demand, [that] the claim of infringement was without merit or deceptive"). Azure never uses the word "baseless" or "sham" in its pleading, nor has it asserted any basis for invalidity, either as an affirmative defense or counterclaim. *See* Dkt. No. 13 at 5-6. But, like the allegation in *Boydstun* that the patent was obtained through fraud, the allegation that Landmark "knew or should have known at the time of the demand [that] the claim of infringement was without merit or deceptive" is "legal conclusion that the Court need not accept as true," and is not sufficient to "support the conclusion that the . . . demand letter was other objectively or subjectively baseless." *Boydstun*, 2017 WL 4803938, at *7 (citing *Iqbal*, 556 U.S. at 678-79). This is particularly true at this stage, given that federal law requires this Court to "presume" the validity of Landmark's patent. *See* 35 U.S.C. § 282(a) ("A patent shall be presumed valid. . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.").

For all these reasons, Azure's Counterclaim should be dismissed.

### 3.   Azure's Counterclaim Is Not Cognizable As An Independent Claim Under the Oregon UTPA, But Even if it Were, Such a Claim Would Still be Preempted.

Assuming ORS § 646A.810 is preempted, Azure's Counterclaim is not cognizable as a claim under the Oregon UTPA independent of ORS § 646A.810, because the UTPA "provides an **exclusive** list of unlawful trade practices" for which suit may be brought. *Farmers Insurance Exchange v. First Choice Chiropractic & Rehabilitation*, 2016 WL 10827072, at *26 (D. Or. 2016) (emphasis added). None of those trade practices are relevant to the conduct alleged here. *See* ORS § 646.608. Indeed, the only provision that makes Azure's claim actionable under the UTPA is § 646A.810(6), which declares a "violation of subsection (2) of this section is an unlawful practice under ORS 646.608 that is subject to an action under ORS 646.638." Section 646A.810 as a whole is preempted, as stated above. *See supra* Sec. III.B.1.

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

The Oregon UTPA does contain a "catch-all" provision applying to "any other unfair or deceptive conduct in trade or commerce."   ORS § 646.608(1)(u).  But this provision does not apply "unless the Attorney General has first established a rule in accordance with the provisions of ORS chapter 183 declaring the conduct to be unfair or deceptive in trade or commerce."  ORS § 646.608(4).  *See Allen v. Delrich Properties, Inc*., 2006 WL 1050536, at *1 (D. Or. 2006).  Azure has not pleaded any applicable rule established by the Oregon Attorney General, and Landmark in unaware of any.

Moreover, even if Azure's Counterclaim were somehow cognizable under the UTPA *without* ORS § 646A.810, such a claim would still be preempted because the UTPA itself does not require a showing of "objective baselessness" or proof by clear and convincing evidence, as required by *Globetrotter* and *Golan*, and also because Azure's claim is preempted as pleaded.

### 4.    Azure's Claims Are Premature Because Azure Cannot Plausibly Plead "Objective Baselessness" Before the Infringement and Validity of Landmark's '319 Patent Has Been Decided.

Azure's Counterclaim should be dismissed without prejudice as premature at this stage because Azure simply cannot amend its Complaint to allege sufficient facts in support of "objective baselessness" at this point, as required by *Globetrotter*.  Any amendment would be futile at this stage because the merits of Landmark's assertion of infringement and the validity of the '319 patent have not been resolved by this Court, or any other.  Thus, Azure cannot plausibly plead "objective baselessness" because no extant facts support it, and any formulation of Azure's Counterclaim will be preempted *as pleaded* at this point (regardless of whether the Oregon statute itself is preempted).

Thus, the Court should at a minimum dismiss Azure's Counterclaim as premature, deferring leave to amend until the infringement and validity of Landmark's '319 patent have been decided on the merits.  *See Visto Corp. v. Sproqit Technologies, Inc*., 360 F.Supp.2d 1064, 1072-73 (N.D. Cal. 2005) (dismissing state tort claims premised on "false and defamatory claims of [patent] infringement" as "premature" because "the merits of the underlying [patent] infringement suit are inextricably intertwined with the tort" claims); *Elantech Devices Corp. v. Synaptics, Inc*.,

18

2006 WL 1883255, at *1 (N.D. Cal. 2006) (dismissing state tort claims against patent owner as "premature" because party could not show patent infringement claims were "objectively baseless" until underlying infringement case was resolved).

**C.    Azure's Counterclaim is Barred by the *Noerr-Pennington* Doctrine and by the Oregon Litigation Privilege.**

Azure's Counterclaim is barred by the *Noerr-Pennington* doctrine "[b]ecause the demand letters at issue here sought settlement of claims against [Azure]" and "no sham is claimed" in Azure's Counterclaim.  *See Sosa*, 437 F.3d at 942 (noting that "[p]relitigation communications demanding settlement of legal claims must be afforded *Noerr-Pennington* protection" where there is no allegation of "sham").

Azure's Counterclaim is also barred by Oregon's "absolute" litigation privilege, which extends to all "conduct undertaken in connection with litigation."  *Mantia v. Hanson*, 190 Or.App. 412, 417 & 423 (2003).  The litigation privilege protects communications made during or in anticipation of a judicial proceeding, and while the conduct must have some relevance to the subject matter of the litigation, the relevance standard is "liberal."  *Wollam v. Brandt*, 154 Or.App. 156, 162-63 (citation omitted).   *Wollam* specifically held that pre-suit letters setting forth the basis for a legal claim and attempting to "resolve the issue without having to resort to litigation" were "pertinent to potential litigation" and hence absolutely privileged.  *Id*. at 160 & 164; *see also Chard v. Galton*, 277 Or. 109, 113 (1977) (applying absolute litigation privilege to statements in letter urging settlement of clients' claims).

Oregon's litigation privilege has been extended to conduct in connection with statutory torts, including claims under the UTPA.  *See Graham v. U.S. Bank, National Association*, 2015 WL 10322087, at *16 (D. Or. 2015) (holding that Oregon's litigation privilege applies to UTPA claim and dismissing claim "as to communications related to actual or reasonably anticipated litigation" as absolutely privileged).  Since the only conduct alleged by Azure is "related to actual or reasonably anticipated litigation" from Landmark, the basis for Azure's Counterclaim is subject to Oregon's litigation privilege and must be dismissed.  *See Graham*, 2015 WL 10322087, at *16.

LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S
FIRST CLAIM FOR RELIEF

**D.    Azure's Counterclaim is Preempted by Federal Antitrust Law.**

At least subsections 4(a) and 4(e) of the Oregon statute are also preempted by federal antitrust law.  Under *Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 889 (9th Cir. 2008), "state statutes or local ordinances creating unsupervised private power in derogation of competition are subject to preemption" by the Sherman Act, 15 U.S.C. § 1.   Section 1 of the Sherman Act prohibits restraints of trade brought about by "contract, combination . . . or conspiracy," i.e., by the collaboration of multiple, separate entities.  Thus, as explained in *Costco*, the test for preemption by the Sherman Act hinges upon whether the state regulatory program imposes a "unilateral" restraint of trade (which is <u>not</u> preempted), or whether it imposes a restraint on trade that is brought about by multiple actors, a so-called "hybrid" restraint of trade, i.e., one wherein there is a "combination" between the state and one or more private actors.  While a "restraint imposed unilaterally by government [e.g., a state statute] does not become concerted action within the meaning of [§ 1 of the Sherman Act] simply because it has a coercive effect upon parties who must obey the law," "[w]here the anti-competitive effects of a state statute obviate the need for private parties to act on their own to create an anti-competitive scheme, the statute may be attacked as a 'hybrid' restraint on trade."  *Id*. at 889 & 899 (quotation omitted).  Essentially, a "hybrid" restraint is one that "involves a state's decision to let [private parties] dictate market conditions to others," and such a restraint "is illegal per se under the Sherman Act."   *Id*. at 887 (quotation omitted). Where the state statute affords a "degree of discretion delegated to private actors," the anticompetitive effect is the result of private action in addition to the authorizing statute, and the restraint of trade is therefore a "hybrid" restraint and preempted.  *Id*. at 890.  Thus, in *Costco*, the Ninth Circuit held that a state law "scheme of requiring the posting of wholesale prices and adherence to those prices for at least 30 days is a hybrid restraint of trade, subject to preemption by the Sherman Act."  *Id*. at 895.

Here, subsections 4(a) and 4(e) of the Oregon statute seek to regulate patent licensing negotiations in a manner resembling the "post-and-hold" restraint held preempted in *Costco*. Subsection 4(a) imposes liability where a "demand required the recipient to respond or to pay a license or other fee within a period of time that a reasonable person would consider unreasonably

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

short," essentially requiring patent owners to keep their offers open for extended periods of time. ORS § 646A.810(4)(a).  While not specifying a particular number of days like the "post-and-hold" restraint in *Costco*, subsection 4(a) essentially forces patent owners to "hold" to particular patent licensing offers once made, for fear of inviting liability.  The effect is much the same as in *Costco*: "[a]n adherence requirement [that] effectively removes market uncertainty by making pricing behavior transparent and discouraging variance." *Id*. at 896.

If patent owners are forced to adhere to opening offers lest they invite liability, they will have little leverage in the bargaining process and will be unable to withdraw offers or utilize short time limitations to facilitate negotiation.  As in *Costco*, although each patent owner "is only required to adhere to its own posted price" communicated in its demand "and is not compelled to follow others' pricing decisions," nevertheless "the logical result of the restraints is a less uncertain market, a market more conducive to collusive and stabilized pricing, and hence a less competitive market." *Id*. at 894.

Subsection 4(e) would impose liability for "offer[ing] to license the patent for an amount that a reasonable person with knowledge of the market value of a license for the invention that is covered by the patent would consider unreasonable." ORS § 646A.810(4)(e).  By forcing patent owners to keep their licensing offers within a much lower range—i.e., within the range of the purportedly "reasonable"—this subsection "would constitute classic price fixing." *Costco*, 522 F.3d at 897 n. 18.  Antitrust law is agnostic whether prices are fixed low or high, because "the central purpose of the antitrust law . . . is to preserve competition" and "[i]t is competition—not the collusive fixing of prices at levels either low or high—that these statutes recognize as vital to the public interest." *Knevelbaard Dairies v. Kraft Foods, Inc*., 232 F.3d 979, 988 (9th Cir. 2000) (rejecting argument that lowering prices was not an antitrust violation and noting that "price fixing is a per se violation regardless of whether the prices set are minimum or maximum.").

Both of these subsections have per se anticompetitive effects, and both are "hybrid" restraints on trade, in that they are effectuated by private parties (here, by Azure via its Counterclaim) in combination with the State of Oregon via the authorizing statute.

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

Thus, subsections 4(a) and 4(e) are preempted by federal antitrust law.  And because the remaining portions of ORS § 646A.810 contain no severability provision, the statute as a whole is preempted.  *See In re Reyes*, 910 F.2d at 613.

For this additional reason, Azure's Counterclaim should be dismissed with prejudice.

**E.    Azure Has Failed to Plead An "Ascertainable Loss" or "Reliance," as Required by Oregon Law.**

**1.    Azure Has Failed to Plead An "Ascertainable Loss of Money or Property"**

Even if Azure's Counterclaim were not preempted by federal patent law and federal antitrust law, were not premature, and/or were not barred by the Oregon litigation privilege, it must still be dismissed because Azure has failed to plead an "ascertainable loss" as required by Oregon law.  ORS § 646.638 provides that a party may file a civil action for trade practices declared unlawful under ORS § 646.608, and ORS § 646A.810 declares that claims for patent infringement made in bad faith are indeed unlawful under §646.608.  However, § 646.638 allows only "a person that suffers an **ascertainable loss of money or property**" as a result of such unlawful trade practices to "bring an individual action."  *Id*. (emphasis added).  Oregon law is clear that "there must, at least, be *some* cognizable loss" in order to recover even "nominal damages in a claim for unlawful trade practices."  *Hedrick v. Spear*, 138 Or.App. 53, 57 (1995) (emphasis original).  Moreover, Oregon law is equally clear that attorney's fees incurred a case for the alleged UTPA violation do not constitute an "ascertainable loss" for purposes of stating a claim under the UTPA, since "[s]uch fees and litigation costs are incurred only as a result of this litigation and are not the type that flow directly from unfair trade practices."  *See Fleshman v. Wells Fargo Bank, N.A*., 27 F.Supp.3d 1127, 1141 (D. Or. 2014) (dismissing UTPA claim) (citing *Paul v. Providence Health System-Oregon*, 237 Or.App. 584, 600-02 (2010)).

Here, Azure seeks an award of actual damages, punitive damages and attorneys' fees, but has completely failed to allege an "ascertainable loss of money or property."  *See* Dkt. No. 13 at 11.  Accordingly, Azure's Counterclaim must be dismissed.

Moreover, granting leave to amend Counterclaim would be futile because Azure simply cannot allege an "ascertainable loss of money or property" caused by Landmark's two letters merely informing Azure of its patent rights.  Azure has apparently expended no other resources

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

apart from the cost of defending this suit and electing to bring this Counterclaim, and such costs are not sufficient to state a UTPA claim under Oregon law.  *See Fleshman*, 27 F.Supp.3d at 1141 (dismissing UTPA claim because, *inter alia*, it failed to allege an "ascertainable loss of money or property"); ORS § 646.638 (permitting a party to bring suit only where the party "suffers an ascertainable loss of money or property").

For this additional reason, Azure's Counterclaim should be dismissed.

### 2.     Azure Has Failed to Plead "Reliance"

To prevail under on a UTPA claim brought under ORS § 646.638, "a plaintiff must prove: (1) a violation of ORS [§] 646.608(1); (2) causation ('as a result of'); and (3) damage ('ascertainable loss')."  *Feitler v. Animation Celection, Inc*., 170 Or.App. 702, 708 (2000). However, where "the alleged violations" of the UTPA "are affirmative misrepresentations, the causal/'as a result of' element requires proof of reliance-in-fact by the consumer."  *Id*.  In such circumstances, without alleging reliance, a UTPA claimant cannot show a chain of causation between the affirmative acts and damages suffered.  *Id*.

Here, as violations of the UTPA, Azure has alleged that Landmark "knew or should have known at the time of the demand, the claim of infringement was without merit or was deceptive," and that "it knowingly and intentionally served demands and filed a lawsuit based on an expired patent and at a time that Landmark was not registered to do business in California or Texas, and appears to have been a defunct entity."[7]  *See* Dkt. 13 at 11-12.  However, as described in Section II.A. and B. above, Azure made these claims after Landmark filed its lawsuit, which contained all of the requirements under the Oregon law.  Had Azure contacted Landmark after receiving its letters, Landmark would have promptly provided any additional information.

---

[7] While Landmark recognizes that Azure's allegations are to be taken as true in this posture for purposes of deciding this motion, Landmark's maintains nonetheless that none of these allegations is true.  Landmark's '319 Patent expired on September 11, 2018, prior to the filing of this lawsuit, and Landmark seeks damages pursuant to 35 U.S.C. § 284 for the period during which Azure was on notice of the '319 Patent up until the patent's expiration on September 11, 2018.  Moreover, Landmark is not a "defunct entity" but a limited liability company organized under the laws of the state of Delaware and in good standing.  Landmark stated nothing to the contrary.  And apart from incorrect factual allegations, Azure improperly asserts legal conclusions this Court need not accept.

23

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

Hence, Azure has failed to plead any reliance on any "affirmative misrepresentations" described in the letters, and hence no causation between those acts and any purported injury. Further, as outlined in Section II.A. and B above, Azure's claims regarding the date that the '319 Patent expired are legally erroneous and thus, Azure cannot state a cause of action based on the Complaint.

Moreover, it is worth noting the "reliance" requirements of the Oregon UTPA make it an exceedingly inappropriate vehicle for Azure's allegations, because reliance on any supposed "misrepresentation" made by an adverse party in anticipation of litigation would be quite implausible. *See In Re Innovatio IP Ventures, LLC Patent Litigation*, 921 F.Supp.2d at 919 ("The recipient of a demand letter typically approaches any representations therein with a dose of skepticism, knowing that demand letters by definition assert a litigation position that the recipient is able to contest.") (citing *Sosa*, 437 F.3d at 941 ("[L]egal representations made by potential litigation adversaries are exceedingly unlikely to be believed without investigation."). Azure simply cannot plausibly allege "reliance" on these facts, as it must to state a claim under the UTPA.

For this additional reason, Azure's Counterclaim should be dismissed.

**F.    Azure Lacks An Objectively Reasonable Basis for Bringing Its Counterclaim, and This Court Should Therefore Award Landmark Attorney's Fees and Costs Incurred in Bringing This Motion.**

Under Oregon law, this Court "may award reasonable attorney's fees to the prevailing party" on a UTPA claim. *Allen v. Delrich Properties, Inc.*, 2006 WL 1050536, at *2 (D. Or. 2006). In *Allen*, the UTPA claimant voluntarily dismissed its UTPA claim after briefing in opposition showed that it could not viably maintain such a claim under the statute. *Id*. Subsequently, the court dismissed the UTPA claim with prejudice and awarded attorneys fees to the "prevailing party." *Id*.

Here, a similar outcome should result. Regardless of how this Court rules on the issues of preemption or ripeness of Azure's claim, or whether it is barred by the Oregon litigation privilege, it is nevertheless clear that Azure's Counterclaim lacks the elements of causation and damages required to state a UTPA claim. *See supra* Sec. III.E.1-2. Moreover, given the facts

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

outlined in Section II.A. and B. above, it is equally clear that Azure cannot cure these deficiencies.  Even more troubling is the fact that Azure made these claims only after the lawsuit was filed – when it had in its possession all of the exhibits to Landmark's Complaint, including the 41-page claim chart outlining Landmark's infringement claims.  Finally, to the extent that Azure wants to continue to base its Counterclaim on its contention that the '319 Patent expired in 2006, a reading of the statute makes it clear that the ''319 Patent was valid until September 11, 2018 – making this "fact" legally erroneous and thus, cannot be a basis for Azure's Counterclaim.

As such, this Court should dismiss Azure's Counterclaim, find that Azure lacks an objectively reasonable basis for bringing it, and award Landmark attorney's fees and costs incurred in preparing this Motion as the "prevailing defendant." ORS § 646.638(3)

## IV.  CONCLUSION

For the foregoing reasons, Landmark asks the Court to dismiss Azure's Counterclaim and award Landmark its attorney's fees and costs incurred in preparing this Motion.

///

///

///

///

///

///

///

///

///

///

///

///

///

25

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S FIRST CLAIM FOR RELIEF**

Dated: November 19, 2018                        Respectfully submitted,

                                                /s/ John A.  Lee
                                    _____

                                        **John A. Lee** (admitted *pro hac vice*)
                                        Banie & Ishimoto LLP
                                        3705 Haven Ave #137
                                        Menlo Park, CA 94025
                                        Telephone: (650) 241-2774

                                        jlee@banishlaw.com

                                        **Timothy S. DeJong,** OSB No. 940662
                                        Email: tdejong@stollberne.com
                                        STOLL STOLL BERNE LOKTING &
                                        SHLACHTER P.C.
                                        209 SW Oak Street, Suite 500
                                        Portland, OR 97204
                                        Telephone: (503) 227-1600


                                        Attorneys for Plaintiff
                                        Landmark Technology, LLC

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S
FIRST CLAIM FOR RELIEF**

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b),

54-1(c), or 54-3(e) because it contains 10,615 words, including headings, footnotes, and

quotations, but excluding the caption, table of contents, table of cases and authorities, signature

block, exhibits, and any certificates of counsel.


By: */s/ John A. Lee*
John A. Lee

**LANDMARK TECHNOLOGY'S MOTION TO DISMISS AZURE FARMS, INC.'S
FIRST CLAIM FOR RELIEF**