UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

LANDMARK TECHNOLOGY, LLC, a
California limited liability corporation,

3:18-cv-1568-JR

           Plaintiff,

FINDINGS & RECOMMENDATION

v.

AZURE FARMS, INC., an Oregon
corporation,

           Defendant.

RUSSO, Magistrate Judge:

    Plaintiff, Landmark Technology, LLC, brings this action alleging infringement of its Automatic Business and Financial Transaction Processing System, Patent No. US 6,289,319 ('319 patent) in violation of [35 U.S.C. § 271(a)](). Defendant, Azure Farms, Inc., asserts two counterclaims, including a claim for bad faith patent enforcement under [Or. Rev. Stat. § 646A.810](). Defendant also alleges affirmative defenses including invalidity of the patent (second affirmative defense), laches and unclean hands (fourth affirmative defense), bad faith litigation (sixth affirmative defense), and

frivolousness (eighth affirmative defense). Plaintiff moves to dismiss defendant's Or. Rev. Stat. § 646A.810 counterclaim and strike defendant's second, fourth, sixth, and eighth affirmative defenses. The Attorney General of Oregon submitted an amicus brief to defend the validity of Or. Rev. Stat. § 646A.810. The Court heard argument on June 19, 2019. For the reasons stated below, the motion to dismiss should be granted and the motion to strike should be granted in part.

BACKGROUND

A. Allegations in the Complaint

In the '319 patent underlying this action, plaintiff claims a "novel automatic data processing system, including an interactive multimedia terminal capable of providing a video-based user interface while both dynamically sending and fetching remote information in order to fetch new inquiring sequences for the user." Complaint (doc. 1) at ¶ 8. Plaintiff asserts direct infringement of this patent in violation of 35 U.S.C. § 271(a) through sales and distributions via electronic transactions conducted on defendant's website. Specifically, plaintiff alleges defendant's website's functionality and supporting server infringe at least Claim 1 of the '319 patent by providing a system that, when accessed by a terminal, practices all of the limitations of the Claim, including:

> a.) The Azure Website's functionality and supporting server, when accessed by a terminal, comprise an automatic data processing system for processing business and financial transactions between entities from remote sites running the Azure Website's functionality.
>
> b.) The Azure Website system includes a central processor (the server and its supporting systems) programmed and connected to process a variety of inquiries and orders transmitted from Azure's functionality running at said remote sites. Azure's system allows for a broad range of transactions, thus a range of orders are possible. The system processes a "variety of inquiries and orders," such as inquiries regarding order history and order status, and the placement of orders for products.
>
> c.) The system is operated through a terminal (e.g., the Azure computer(s) at each of said remote sites), which terminal includes a data processor and operates in response to operational sequencing lists of program instructions (the code constituting the

transaction systems). That terminal includes a DMA positioned independently on its own information handling connection, or its equivalent.

d.) The system fetches additional inquiring sequences in response to a plurality of data entered through a keyboard and in response to information received from the central processor. For example, the "Sign-In" section of the Azure Website fetches additional inquiring sequences relating to erroneous or empty data fields, depending on the user's entry and information received from the central processor.

e.) The server for the Azure Website and Azure's computerized station(s), together with software, practice all of the remaining limitations of Claim 1 of the '319 Patent. Azure's Website, functionality and server, and incorporated and/or related systems, put the invention into service.

Complaint (doc. 1) at ¶ 22.

In its second claim for relief, plaintiff alleges defendant, through continued business operations, has knowingly induced its customers to continue infringing plaintiff's patent by using defendant's website in violation of 35 U.S.C. 271(b). Complaint (doc. 1) at ¶ 28-33. Prior to filing this lawsuit, plaintiff mailed two letters to defendant alleging infringement of its '319 patent and demanding defendant either pay a license fee for the patent or face litigation. Id. at ¶ 16. Defendant did not respond and plaintiff initiated this lawsuit on August 24, 2018.

B.   Allegations in the Answer

On October 29, 2018, defendant filed an answer asserting a counterclaim for bad faith patent enforcement in violation of Or. Rev. Stat. § 646A.810. On November 19, 2018, plaintiff moved to dismiss asserting the state statute itself is preempted by federal patent law and the claim as pleaded is preempted. In addition, plaintiff asserted the counterclaim was premature, the counterclaim was barred by the Oregon Litigation Privilege and the Noerr-Pennington Doctrine, and defendant failed to plead ascertainable loss and reliance. The Court heard argument on March 20, 2019, indicating it was inclined to dismiss the counterclaim as pleaded. Also on that date, the Court discovered that defendant had prepared an amended answer, but neglected to file it. Accordingly, the motion to

dismiss was denied as moot and defendant filed its amended answer on March 26, 2019.

In the amended answer, defendant alleges that on November 3, 2017, it

> received a generic demand letter suggesting that the process used by Azure was similar to the '319 patent. No specific details were provided, no request for verification of assumptions was made by the letter's author, and no copy of the patent or information about the patent holder or expiration date of the patent was provided. Instead, the author, demanded $65,000 as a license fee to use the technology that had been created by Azure's internal IT team. Azure was given 15 days to decide whether to purchase a license – significantly more than a go-to-market e-commerce software package would cost.

Amended Answer (doc. 43) at ¶ 52. Defendant alleges it received a second letter again demanding a license fee payment of $65,000. However, defendant asserts it did not believe infringement existed and therefore did not purchase the license or otherwise respond to the demand letters. Id. at ¶ 53.

Defendant alleges that after plaintiff commenced this action, it "realized that the priority and filing date for the '319 patent was January 24, 1986. . . . [and] that the expiration date for the '319 patent was 20 years from the priority date – January 24, 2006." Id. at ¶ 55. Accordingly, defendant asserts the patent is expired, making it impossible for defendant to have infringed plaintiff's patent. Id.

Defendant asserts two counterclaims including a claim for bad faith patent enforcement in violation of Or. Rev. Stat. § 646A.810 that alleges:

> The determination of bad faith may be guided by the circumstances outlined in ORS § 646A.810(4). A number of these factors are established here, including:
> • Landmark's demand required Azure to respond or to pay the license or other fee within a period of time that a reasonable person would consider unreasonably short, such as the 15-day period at issue here;
> • Landmark's demand did not include current and accurate contact information for the patentee, assignee, or licensee, including a name, address, and phone number or other contact information that would enable the recipient to identify and communicate with the patentee, assignee or licensee;
> • Landmark's demand did not include a statement of facts, together

> with an explanation or a description of the facts that would enable a reasonable person to understand the basis of the allegation or claim that Azure had infringed the patent or the rights of Landmark;
> • Landmark, before communicating the demand, failed to compare the claims in the patent to the features or specifications of the recipient's product, services or technology that Azure had used during the relevant periods of time;
> • Landmark, before communicating the demand, failed communicate in a way that enabled Azure to specifically identify the infringing features or specifications of Azure's technology;
> • Landmark offered a license to Azure for an amount that a reasonable person with knowledge of the market value of a license for the covered invention would consider unreasonable;
> • Landmark knew or should have known at the time of the demand, the claim of infringement was without merit or was deceptive; and
> • Landmark previously communicated the same demand or filed a complaint based on similar allegations – in fact, it has pursued over 100 retail defendant claims based on nearly identical allegations. Many were pursued after the patent expired.

Id. at ¶ 60. Accordingly, defendant alleges plaintiff violated Or. Rev. Stat. § 646A.810 when it knowingly and intentionally served "outrageous demands and filed an objectively baseless lawsuit" based on a patent that was about to expire while also conducting business without properly establishing a principal place of business. Amended Answer (doc. 43) at ¶¶ 61-62.

Defendant also asserts several affirmative defenses including: invalidity of the patent, laches and unclean hands, and pursuit of frivolous bad faith litigation. Id. at ¶¶ 37, 39, 41, 43. Plaintiff now moves to dismiss the first counterclaim and noted affirmative defenses.

DISCUSSION

Plaintiff asserts the first counterclaim under Or. Rev. Stat. § 646A.810 is preempted, barred by the Noerr-Pennington doctrine and the Oregon Litigation Privilege, and in any event fails to plead the necessary elements of ascertainable loss or reliance. In addition, plaintiff argues defendant's sixth and eighth affirmative defenses asserting bad faith are preempted, the second affirmative

defense of invalidity has been waived, and the fourth affirmative defense of laches and unclean hands is not valid.

A.  Preemption

Plaintiff asserts Or. Rev. Stat. § 646A.810 is preempted by federal patent law under the rule of conflict preemption.

Conflict preemption occurs "where it is impossible for a private party to comply with both state and federal requirements." Id. Generally, there is a presumption against preemption of state law:

> "because the states are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest.'"

Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005).

Unfair trade practices are traditionally an area of state regulation. Zenith Electronics Corp. v. Exzec, Inc., 182 F.3d 1340, 1355 (Fed. Cir. 1999) (finding a presumption against preemption in areas such as unfair business practices traditionally regulated by states) (citing California v. ARC Am. Corp., 490 U.S. 93, 100 (1989)). Oregon's Unlawful Trade Practices Act includes provisions prohibiting communication of a demand asserting claims in bad faith that the recipient has infringed a patent. Or. Rev. Stat. § 646A.810(2), (3). Oregon's bad faith patent infringement prohibition under its Unlawful Trade Practices Act permits courts to:

consider one or more of the following conditions as evidence that a person or the person's affiliate has, in bad faith, alleged, asserted or claimed an infringement of a patent or rights that a patentee, assignee or licensee has under a patent:
  (a) The demand required the recipient to respond or to pay a license or other fee within a period of time that a reasonable person would consider to be unreasonably short.
  (b) The demand did not include:
  (A) The patent number for the patent that the person or the person's affiliate alleges,

asserts or claims that the recipient infringed;
(B) Current and accurate contact information for the patentee, assignee or licensee, including a name, address and phone number or other contact information that would enable the recipient to identify and communicate with the patentee, assignee or licensee; and
(C) A statement of facts, together with an explanation or a description of the facts that would enable a reasonable person to understand the basis of the allegation or claim that the recipient has infringed the patent or the rights of the patentee, assignee or licensee under the patent.
(c) The person or the person's affiliate failed to provide the information described in paragraph (b) of this subsection to the recipient within a reasonable time after the recipient requested the information.
(d) The person or the person's affiliate, before communicating the demand:
(A) Failed to compare the claims in the patent to the features or specifications of the recipient's product, service or technology that the person or the person's affiliate alleges, asserts or claims is an infringement of the patent or the rights of the patentee, assignee or licensee under the patent; or
(B) Conducted the comparison described in subparagraph (A) of this paragraph, but in a way that did not enable the person or the person's affiliate to specifically identify the infringing features or specifications of the recipient's product, service or technology.
(e) The person or the person's affiliate offered to license the patent for an amount that a reasonable person with knowledge of the market value of a license for the invention that is covered by the patent would consider unreasonable.
(f) The person or the person's affiliate knew or should have known at the time the person or the person's affiliate communicated the demand that the allegation, assertion or claim of infringement was without merit or was deceptive.
(g) The person or the person's affiliate previously communicated a demand or filed a complaint based on the same or a similar allegation, assertion or claim and:
(A) The demand did not include the information described in paragraph (b) of this subsection; or
(B) A court, an arbitration panel or another body with power to adjudicate a patent dispute dismissed the complaint as frivolous or without merit at any point during a proceeding before the court, the panel or the body.
(h) The person or the person's affiliate engaged in other conduct that the Attorney General by rule identifies as evidence of alleging, asserting or claiming an infringement in bad faith.

[Or. Rev. Stat. § 646A.810(4)](#).

Courts have established that:

states can generally regulate patented products as part of their general exercise of police powers without preemption, even if this regulation incidentally affects the profits a patentee gains from its patent.... But that states have broad leeway to regulate patented products does

not mean that they have unlimited ability to do so in situations in which the regulation significantly and directly impedes Congress's purpose in providing the federal patent right.

Biotechnology Indus. Org. v. D.C., 505 F.3d 1343, 1346, n. 1 (Fed. Cir. 2007).

Federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith. See, e.g., Virginia Panel Corp. v. MAC Panel Co., 133 F.3d 860, 869 (Fed. Cir. 1997) ("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction."); Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700, 709 (Fed. Cir. 1992) (a patentholder "that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers"); Concrete Unlimited Inc. v. Cementcraft, Inc., 776 F.2d 1537, 1539 (Fed. Cir. 1985) (a patentholder "did only what any patent owner has the right to do to enforce its patent, and that includes threatening alleged infringers with suit"); Kaplan v. Helenhart Novelty Corp., 182 F.2d 311, 314 (2d Cir. 1950) ("[I]t is not an actionable wrong for one in good faith to make plain to whomsoever he will that it is his purpose to insist upon what he believes to be his legal rights, even though he may misconceive what those rights are."). In fact, 35 U.S.C. § 287 authorizes patentholders to "give notice to the public that the [patented article] is patented" and makes marking or specific notice of the patent to the accused infringer a prerequisite to the recovery of damages.

Given this federal patent law protection for asserting patent rights and pursuit of litigation for infringement, state laws imposing liability for patent enforcement in good faith are preempted. State law can survive federal preemption only to the extent that claims are based on a showing of

"bad faith" in asserting infringement. Globetrotter Software, Inc. v. Elan Computer Grp., Inc., 362 F.3d 1367, 1374 (Fed. Cir. 2004). Accordingly, to avoid preemption, "bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." Id. Therefore, to avoid preemption in the case at bar, defendant must allege bad faith including that the infringement claim is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Id. at 1376.

As noted above, the Oregon legislature permits courts, in determining whether a plaintiff engaged in prohibited communication demands by asserting claims in bad faith, to consider acts that do not rise to the level of objective baselessness. Nonetheless, to avoid preemption defendant must only plead and prove objective baselessness, regardless of whether bad faith is an element of the tort claim. See, e.g., Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1355 (Fed. Cir. 1999). Here, bad faith is in fact an element of the claim, and for the claim to survive preemption on a motion to dismiss, defendant must plead facts plausibly suggesting objective baselessness. Cf. Boydstun Equip. Mfg., LLC v. Cottrell, Inc., 2017 WL 4803938, at *18 (D. Or. Oct. 24, 2017) (Plaintiff "has not alleged a sufficient factual basis from which the court can reasonably infer that [defendant's] patent enforcement actions were 'objectively baseless.'" Therefore, "[plaintiff's] claim under ORS § 646A.810 is preempted by federal law.").

Plaintiff suggests that the state statute as a whole is preempted because it imposes liability without evaluating whether an assertion of patent infringement is objectively baseless. Indeed, defendant asserts liability under the statute for a variety of the reasons listed as considerations under

Or. Rev. Stat. § 646A.810(4) which do not rise to the level of objective baselessness. See Amended Answer (doc. 43) at ¶ 60. Notably, the statute provides a non-exclusive list of considerations of both bad faith and good faith. See Or. Rev. Stat. § 646A.810(5) (A court may consider one or more of the following conditions as evidence that a person has, in good faith, alleged, asserted or claimed an infringement . . .). See Globetrotter Software, Inc., 362 F.3d at 1376, n.8 ("[T]he plaintiff must also establish subjective bad faith: 'Only if the challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. . . .'") (quoting Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 57 (1993) (quoting Eastern R. R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 144 (1961))). As noted above, even if bad faith is not otherwise an element of the state law tort claim, the claim may still survive preemption.

Plaintiff also suggests that the requirement to read objective baselessness into the state statute is not permitted to save the statute from preemption. Requiring defendant to plead and prove objective baselessness, however, does not rewrite the statute because the statute does not define bad faith or good faith beyond offering a non-exhaustive list of considerations for each. Cf. United States v. Manning, 527 F.3d 828, 840 (9th Cir. 2008) (excising the most significant conflicts in the statute would result in a very different statute than the one envisioned by the State of Washington and thus the whole statute is preempted).[1]

The more pressing problem concerns the standard of proof. Under federal patent law, a party challenging patent enforcement activity must present affirmative evidence sufficient for a reasonable

---

[1] To the extent Or. Rev. Stat. § 646A.810(4) provides individual bad faith factors that plaintiff believes conflict with federal patent law, as noted above, the factors are not required but are merely issues that a court may consider and may very well apply to subjective bad faith.

jury to conclude that the patentee acted in bad faith by clear and convincing evidence. Golan v. Pingel Enter., Inc., 310 F.3d 1360, 1371 (Fed. Cir. 2002). In contrast, the standard of proof required in a proceeding under Oregon's Unlawful Trade Practices Act is preponderance of the evidence. State ex rel. Redden v. Disc. Fabrics, Inc., 289 Or. 375, 386, 615 P.2d 1034, 1039 (1980). Applying the more stringent standard to the bad faith patent infringement claim under Oregon's Unlawful Trade Practices Act would impose a construction of the statute unintended by the Oregon legislature. The Act's legislative history supports the view that the Act is to be interpreted liberally as a protection to consumers. Denson v. Ron Tonkin Gran Turismo, Inc., 279 Or. 85, 90, n. 4, 566 P.2d 1177, 1179 n. 4 (1977). Thus, the legislature did not intend a higher standard of proof. Accordingly, the statute as a whole is in conflict with federal patent law and cannot be saved by excising the standard of proof. See Manning, 527 F.3d at 840. As such, the first counterclaim should be dismissed with prejudice.

To the extent the statute is not preempted, defendant's counterclaim as pleaded is preempted. Defendant merely pleads the conclusory allegation that plaintiff's patent enforcement was objectively baseless. Amended Answer (doc. 43) at ¶¶ 61-62. The closest factual allegation defendant makes is that plaintiff asserted patent rights that were about to expire. However, because the patent was still valid, there was, in fact, an objectively valid basis to assert infringement. In defendant's response (and more extensively discussed in defendant's response to plaintiff's motion to compel (doc. 72)), defendant asserts the '319 patent is a utility patent addressing generic components of hardware. Specifically, defendant asserts the patent relates to terminals used by banking institutions to make their services available at all hours of the day from various remote

locations. Moreover, defendant asserts the principal objects of this invention are to provide an economical means for screening loan applications and to standardize the reporting and interpretation of credit ratings and their application to loan application processing. Defendant will assert that plaintiff's infringement claim is objectively baseless because defendant does not have terminals to screen credit. Rather, defendant has a website that allows customers to review a catalog and place and pay for orders. In essence, defendant will allege the terminal is the key feature of plaintiff's '319 patent which is entirely missing from defendant's system. Thus, defendant will allege plaintiff's claim is rendered objectively baseless.

To the extent defendant will amend to add these allegations, plaintiff argues the allegations are premature and essentially raise claim construction issues. Because plaintiff argues that new assertions of objective baselessness are contravened by Claim 1 of the '319 patent, assuming the statute itself is not preempted, the Court should dismiss the claim without prejudice and thus allow for allegations after the claim construction process. See Elantech Devices Corp. v. Synaptics, Inc., 2006 WL 1883255, at *1 (N.D. Cal. July 7, 2006) (Elantech cannot plead around preemption and allege that Synaptics' infringement allegations were "objectively baseless" until Synaptics' infringement claims are resolved).

B.      Noerr-Pennington Doctrine and the Oregon Litigation Privilege

If the counterclaim survives preemption, the Noerr-Pennington doctrine does not require dismissal. Pre-litigation demand letters made in bad faith are not protected by the Noerr-Pennington Doctrine. IPtronics Inc. v. Avago Techs. U.S., Inc., 2015 WL 5029282, at *8 (N.D. Cal. Aug. 25, 2015) (sufficiently pleaded allegations of objective baselessness circumvent claim to

Noerr-Pennington immunity).  In addition, defendant's bad faith claim is not barred by the Oregon Litigation Privilege. While this privilege does apply to communications related to litigation, it "is not absolute, but rather limited to actions taken in good faith and that otherwise do not involve maliciousness or deliberate misadministration of justice." Manita v. Hanson, 190 Or. App. 404, 412 (2003).

C.   Ascertainable Loss and Reliance

If the counterclaim survives preemption and defendant amends the counterclaim to allege the new facts not absent from the current answer, plaintiff asserts defendant will have still failed to allege ascertainable loss and reliance.  Under Oregon's Unlawful Trade Practices Act, damages are recoverable by any person who suffers any ascertainable loss of money or property. Hedrick v. Spear, 138 Or. App. 53, 57, 907 P.2d 1123, 1125 (1995).  Defendant only alleges entitlement to "actual damages" and attorney fees.  Amended Answer (doc. 43) at ¶ 62.   Those allegations are insufficient.  Fleshman v. Wells Fargo Bank, N.A., 27 F. Supp. 3d 1127, 1141 (D. Or. 2014) (fees and litigation costs are incurred only as a result of this litigation and are not the type that flow directly from unfair trade practices).  In response to the motion, defendant asserts only:

> To the extent this frivolous litigation has caused significant disruption and distraction to Azure, and put its goodwill with customers in jeopardy, there is, and will continue to be mounting damages as this case progresses.

Defendant's Opposition (Doc. 53) at p. 9.  These conclusory allegations do not allege a sufficient factual basis for ascertainable loss.  At oral argument, however, defendant asserted it incurred losses in placing long distance phone calls to inquire about the letters and was unable to obtain a loan because of the allegations.  Defendant further asserted it incurred losses in hiring a software expert

for a non-infringement opinion. Losses related to the non-infringement opinion appear related to litigation expenses and are thus not ascertainable losses due to unfair trade practices. If the claim survives preemption, however, leave to amend should be allowed to plead facts showing an ascertainable loss.

In addition, to prevail on an Unlawful Trade Practices Act claim, plaintiff must plead and prove, among other things, causation. Feitler v. Animation Celection, Inc., 170 Or. App. 702, 708, 13 P.3d 1044, 1047 (2000). When a party asserting such a claim purports to have acted on a seller's express representations, factual reliance is essential to proving causation. Id. Defendant fails to allege any affirmative reliance on the demand letters. In fact, defendant alleges it "did not believe there was infringement and did not purchase the license or respond to the demand letters." Amended Answer (doc. 43) at ¶ 53. If the claim survives preemption, however, leave to amend should be allowed to further allege facts showing reliance on the alleged bad faith litigation in incurring the losses asserted at oral argument.

D.      Attorney Fees

If the Court grants the motion to dismiss defendant's first counterclaim, plaintiff seeks an award of fees. The Court may only award reasonable attorney fees and costs to a prevailing party opposing an action under Oregon's Unlawful Trade Practices Act if the Court finds that an objectively reasonable basis for bringing the action or asserting the ground for appeal did not exist. Or. Rev. Stat. § 646.638(3). Although it appears the claim may be preempted, conflict preemption in this area is decided on a case-by-case-basis. The fact that a state law tort claim need not have bad faith "objective baselessness" as an element and could still survive preemption provides a reasonable

belief that such a claim is viable. Moreover, although the current answer fails to plead sufficient facts to demonstrate objective baselessness, the claim construction process may provide those facts given defendant's assertions regarding configuration of the claimed patent. In addition, because a previous case in this district suggested that an Or. Rev. Stat. § 646A.810 claim can survive federal preemption (Boydstun, 2017 WL 4803938 at * 18 noted above), it was reasonable to bring this action. This is true despite the fact that it now appears the standard of proof may indeed subject the claim to preemption, even assuming allegations of objective baselessness can be made.

Although it appears defendant also lacks sufficient allegations to demonstrate ascertainable loss and reliance, it does not appear objectively unreasonable to raise the claim. Given the uncertainty governing the viability of a state law bad faith patent infringement claim, the Court should decline to award fees if the motion to dismiss is granted.

E.     Sixth and Eighth Affirmative Defenses

Defendant asserts plaintiff's claims are barred because it pursued frivolous litigation in bad faith for its sixth affirmative defense. Defendant asserts plaintiff's claims are frivolous, objectively baseless, and pursued in bad faith for its eighth affirmative defense. Plaintiff asserts these defenses should be stricken for the same reasons the first counterclaim should be dismissed. However, to the extent the claim construction process could demonstrate objective baselessness, the motion to strike should be denied at this time.

F.     Second Affirmative Defense

Defendant asserts the '319 patent is invalid for its second affirmative defense. Plaintiff contends defendant has waived this defense both because it failed to serve invalidity contentions by

the deadline and because it does not contain the requisite specificity. Because the parties are still litigating the validity of the Amended Answer, on its own motion, the Court extends the deadline for an additional thirty days from the date of this order.  Defendant should be allowed to amend its answer to flesh out its invalidity allegations and should do so within thirty days.  The motion to strike the second affirmative defense should be denied.

G.      Fourth Affirmative Defense

Defendant asserts plaintiff's claims are barred under the doctrines of laches and unclean hands for its fourth affirmative defense.  Defendant concedes this affirmative defense should be stricken, and therefore the Court should grant the motion to strike the fourth affirmative defense.

## CONCLUSION

Defendant's motion to dismiss and strike  (doc. 50 ) should be granted in part and denied in part as noted above.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.  The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to

appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 26th day of June, 2019.

                                                           /s/ Jolie A. Russo
                                                       JOLIE A. RUSSO
                                                       United States Magistrate Judge